# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# DURHAM DIVISION
# CIVIL ACTION NO.:

| | |
|---|---|
| **FELECIA T. BROWN** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT** |
| **FAMILY DOLLAR STORES OF** ) | **(and demand for Jury Trial)** |
| **NORTH CAROLINA, INC.,** ) | |
| **FAMILY DOLLAR STORES, INC.,** ) | |
| **MUHAMMED BHATTI,** ) | |
| **and MICHELLE CARROLL,** ) | |
| ) | |
| **Defendants.** ) | |

## PRELIMINARY STATEMENT

Felecia Brown, an assistant manager with six years' experience, began working for Defendant Family Dollar Stores of North Carolina, Inc. in July of 2018. Ms. Brown (hereinafter "Plaintiff") worked to the satisfaction of her supervisors until she was terminated soon after reporting pervasive racial discrimination continually directed to her by her coworkers. Defendants Muhammed Bhatti and Michelle Carroll, Plaintiff's supervisors, permitted and failed to adequately address blatant acts of discrimination against Plaintiff until Defendant Family Dollar Stores of North Carolina, Inc., acting on behalf of Defendant Family Dollar Stores, Inc. ultimately terminated Plaintiff in retaliation for her repeated reports of discrimination, under the pretext that Plaintiff refused a transfer. Plaintiff Brown now asserts claims against Defendants under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e, *et seq.*, under 42 U.S.C. § 1981, the North Carolina Wage & Hour Act, N.C. Gen. Stat. § 95-25.4, *et seq.*, and under North Carolina Common Law protection against Negligent Retention and Supervision.

## PARTIES

1. At all times relevant to this complaint, Plaintiff Felecia Brown was and is a citizen of Durham, North Carolina, in Durham County. Plaintiff was an "employee" of Defendant Family Dollar Stores of North Carolina, Inc. within the meaning of the common law and within the meaning of 42 U.S.C. § 2000e(f).

2. At all times relevant to this complaint, Defendant Family Dollar Stores of North Carolina, Inc. is and was a duly incorporated foreign business entity, incorporated in Virginia, registered as a "Current – Active" business operating in the state of North Carolina, having a principal place of business at 500 Volvo Parkway, Chesapeake, VA 23320.

3. Defendant Family Dollar Stores of North Carolina, Inc., upon information and belief, operates multiple retail stores in the state of North Carolina under the name of "Family Dollar," including the Family Dollar location at 5178 Wake Forest Highway, Durham NC 27703, Facility Number 7548.

4. Defendant Family Dollar Stores of North Carolina, Inc. currently holds a five-year Short Form Lease over the property at 5178 Wake Forest Highway, Durham, NC, effective until December 31, 2026.

5. Upon information and belief, Defendant Family Dollar Stores, Inc. and Defendant Family Dollar Stores of North Carolina, Inc. shared common ownership and management such that the dependent entity, Defendant Family Dollar Stores of North Carolina, Inc. operated as a functional extension of the controlling entity, Defendant Family Dollar Stores, Inc.

6. At all times relevant to this complaint, Defendant Family Dollar Stores, Inc. is and was a duly incorporated foreign business entity, incorporated in Delaware, registered as a

"Current – Active" business operating in the state of North Carolina, having a principal place of business at 500 Volvo Parkway, Chesapeake, VA 23320.

7. At all times relevant to this complaint Defendants Family Dollar Stores, Inc. and Defendant Family Dollar Stores of North Carolina, Inc. did business in the State of North Carolina and acted as "employer" of Plaintiff within the meaning of 42 U.S.C. §2000e(b) and regularly employed over 500 employees.

8. The events herein complained of took place principally at Defendants' place of business at 5178 Wake Forest Highway, Durham NC 27703, Facility Number 7548.

9. Upon information and belief, at all times relevant to this complaint, Defendant Muhammed Bhatti has been a citizen of Wake County. At all times relevant to this action, Defendant Bhatti acted as Plaintiff's supervisor.

10. Upon information and belief, at all times relevant to this complaint, Defendant Michelle Carroll has been a citizen of Durham, County. At all times relevant to this action, Defendant Carroll acted as Plaintiff's supervisor.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as certain Plaintiff's causes of action arise under the laws of the United States.

12. Venue is proper in the United States District Court for the Eastern District of North Carolina under 28 U.S.C. § 1391(b)(1) and (b)(2), inasmuch as the event or omissions giving rise to the following claims occurred within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 24, 2019, alleging racial discrimination and retaliation.

The EEOC issued a Right to Sue letter on September 25, 2021, a copy of which is attached as **Plaintiff's Exhibit A**.

## FACTS

14. Plaintiff Felecia T. Brown took on a second job at Defendant Family Dollar as an assistant manager on the evening and weekend shifts in early July of 2018.

15. Plaintiff also worked during the day at B&D Integrated Care as an intake coordinator, where she still works to date.

16. At the time, Plaintiff had worked at two previous establishments as an assistant manager and had six years of experience.

17. Up and until starting her employment with Defendant Family Dollar, Plaintiff had received positive evaluations at both her contemporaneous and previous employment.

18. When Plaintiff began her employment with Defendant, she was consistently scheduled to work and close the store location with a white, male employee named David Ross.

19. From the first time Plaintiff and Mr. Ross worked together, Mr. Ross acted hostilely toward Plaintiff.

20. Mr. Ross would yell in her face, tell her to hurry up, and threaten that "something bad" would happen to her if she did not close the store quickly.

21. Plaintiff spoke to her manager, Defendant Carroll, and asked if she could be scheduled with someone other than Mr. Ross, as working with him made her uncomfortable, and she feared that he may become violent.

22. Though Plaintiff repeatedly asked to be scheduled with another employee, Plaintiff was still consistently assigned to work and close with Mr. Ross.

23. Mr. Ross continued to harass Plaintiff when one day she asked him why. Mr. Ross did not initially respond. Plaintiff then asked "Is it because I'm black or because I'm a woman? It's because I'm black, isn't it?"

24. Mr. Ross responded, "There, I didn't have to say it. You said it for me."

25. Plaintiff communicated to her manager, Defendant Michelle Carroll, that Mr. Ross had called her discriminatory names, yelled at her, and threatened her.

26. One day, in or about late November or December, Plaintiff had two days off for the holidays and there was a breaking and entering at the store.

27. When Plaintiff returned from her holiday, Mr. Ross turned to Plaintiff and in an accusatory tone asked, "Felecia, where were you? We got robbed, where were you?"

28. Plaintiff asked why Mr. Ross would ask her that. He responded that he asked because "of course, it was someone black who robbed the store."

29. Defendant Carroll heard the whole exchange and when Plaintiff asked her to intervene, Defendant Carroll responded, "Felecia, the man who robbed the store *was* black."

30. Plaintiff was shocked at Defendant Carroll's response and asked Defendant Carroll how to formally file a complaint. Defendant Carroll responded that Plaintiff should let her handle the situation—that Plaintiff was only to report to her and no one else.

31. Defendant Carroll did nothing to address either Mr. Ross' behavior and gave no apology for her own dismissive and discriminatory remarks.

32. On or about January 26, 2019, Defendant Carroll went out of town and a fill-in manager, Shannon Tapia-Ponce, came in from a sister location came in to oversee the store.

33. When Ms. Tapia-Ponce came in, Plaintiff, who was "not allowed" to make overtime pay, had clocked out, but could not leave until relieved by a manager and had worked six hours past her shift.

34. Plaintiff approached Ms. Tapia-Ponce and asked a couple of times if she could do a walk-through with Plaintiff so that Plaintiff could leave for the day, but Ms. Tapia-Ponce was on the phone on what seemed to be a personal call and ignored her.

35. When Plaintiff tapped Ms. Tapia-Ponce on the shoulder, she whipped around and responded, "What the hell is your problem?"

36. Mr. Ross, who was working at the store that evening, heard the exchange and, leaving the register unattended, ran to where they were standing in the aisle and started yelling, close to Plaintiff's face, "Leave her the fuck alone, you black bitch!"

37. Plaintiff felt completely unsafe and feared for her safety until two customers in the store came and got between she and Mr. Ross and assured her that they would not let Mr. Ross near her.

38. Ms. Tapia-Ponce angrily told Plaintiff to collect her things and clock out, but Plaintiff had already clocked out and had been working off the clock for the past six hours, so she collected her things and left as she was directed.

39. Defendant Carroll called Plaintiff following the incident and asked, "What is your problem?" stating that Mr. Ross had called and reported to her (Ms. Carroll) that Plaintiff was causing problems.

40. Plaintiff tried to explain the events and asked Defendant Carroll how to handle the situation to which Defendant Carroll responded, "I'm not dealing with this."

6

Case 1:21-cv-00977-LCB-LPA   Document 1   Filed 12/27/21   Page 6 of 18

41. After months of attempting to endure Mr. Ross' derogatory comments and threats, attempting to seek a simple solution, and fruitlessly seeking assistance from her direct supervisor, Plaintiff called Defendant Bhatti, the then District Manager for Defendant Family Dollar.

42. Plaintiff told Defendant Bhatti of the consistent discrimination she had experienced while working with Mr. Ross and Defendant Carroll's refusal to handle the situation.

43. Defendant Bhatti responded that Plaintiff's "remarks [were] heard," and that he would "deal with it" by transferring her to a different Family Dollar location so she would not have to work with someone who is "hostile."

44. That evening, Defendant Carroll texted Plaintiff and accused Plaintiff of going "straight over [her] head before [she] could hand it [herself]."

45. Plaintiff did her best to assure Defendant Carroll that she had only asked for a transfer.

46. Defendant Carroll asked Plaintiff Defendant Bhatti granted Plaintiff's request for transfer and Plaintiff explained that he had not, but he likely would if Defendant Carroll would ask for him to do so as well.

47. At this point, Defendant Carroll said that she did not know what to do because she had always tried to handle store business herself without getting district management involved.

48. Defendant Carroll then told Plaintiff that Plaintiff would need to draft her resignation, as she had not gone through the proper chains of command and that she would have a two weeks notice instead of a transfer, stating that she would "call Moe [tomorrow]."

49. Plaintiff responded asking if she was fired and attempted to explain that she contacted Defendant Bhatti specifically because Defendant Carroll was on vacation.

50. Defendant Carroll attempted to argue that Plaintiff had already given her resignation over the phone, that she was not asking for it.

51. At this point, Plaintiff stated definitively that she was not resigning and that she had only gone to Defendant Bhatti in efforts to protect herself.

52. Plaintiff was told to turn in her keys for the new assistant manager who had been training at her assigned location. Believing that Defendant Bhatti would handle the situation as he had promised, Plaintiff did as she was told.

53. When delivering the keys, Plaintiff asked if she was going to get to transfer but was not given any answer.

54. Plaintiff called Defendant Bhatti multiple times in an attempt to get answers on what he was doing to handle the situation as he had promised.

55. Plaintiff, after waiting for three days for a response from Mr. Bhatti, called the Human Resources ("HR") department of Defendant Family Dollar on or about February 4, 2019. Over the phone, a representative with Defendant Family Dollar's HR Department told Plaintiff that she no longer had the option to transfer because she did not timely accept their offer of a transfer.

56. Plaintiff was confused and asked the HR representative for clarification—explaining to the representative that no one had ever expressly granted her request for transfer.

57. The HR representative told Plaintiff that, according to her records, Defendant Bhatti had given Plaintiff six different store options to choose from for transfer and that Plaintiff could choose any one.

58. When Plaintiff attempted to explain that Defendant Bhatti had not communicated any of those options to her, the HR representative accused Plaintiff of lying and stated that Plaintiff was fired effective immediately.

59. Plaintiff suffered severe financial hardship, even to the point of being evicted from her home following her termination from Defendant Family Dollar and therefore suffered significant emotional distress.

60. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violation of Title VII of the Civil Rights Act of 1964 on the basis of race. On or about September 25, 2021, Plaintiff was issued a notice of a Right to Sue. All conditions precedent to this lawsuit have been fulfilled.

61. As of the date of the termination of Plaintiff's employment, she had accrued and earned certain promised wages, including overtime pay earned between early July 2018 and February 4, 2019.

62. Subsequent to terminating Plaintiff's employment, Defendant Family Dollar has failed to pay Plaintiff her due and earned wages and benefits.

63. Upon information and belief, Defendant Family Dollar Stores of North Carolina, Inc. is a wholly owned subsidiary of Defendant Family Dollar Stores, Inc.

64. Upon information and belief, Defendants Family Dollar Stores, Inc. and Family Dollar Stores of North Carolina, Inc. share the same Principal Office and team of executive officers, such that, upon information and belief, Defendant Family Dollar Stores of North Carolina, Inc. operates dependent of Defendant Family Dollar Stores, Inc., having no independent mind or ability to make decisions independent of the control of Defendant Family Dollar Stores, Inc.

65. Operating as dependent agent of Defendant Family Dollar Stores, Inc., Defendant Family Dollar Stores of North Carolina, Inc.'s failure to act to ensure the protections of Plaintiff's civil rights is the proximate cause of Plaintiff's injuries.

# FIRST CLAIM FOR RELIEF: VIOLATION OF THE NORTH CAROLINA WAGE AND HOUR ACT

***(Defendant Family Dollar Stores, Inc. and Family Dollar Stores of North Carolina, Inc.)***

66. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

67. Plaintiff was at all times an employee of Defendants within the meaning of N.C. Gen. Stat. § 95-25.4 (the North Carolina Wage and Hour Act, or "NCWHA").

68. On February 4, 2019, Plaintiff was suddenly terminated.

69. Defendants communicated to Plaintiff multiple times that she was only to work her scheduled hours and instructed Plaintiff to clock out at her scheduled time, but to finish all work after doing so.

70. Defendants have failed to pay Plaintiff's accrued overtime which is due as earned wages under the NCWHA.

71. As Defendants' non-payment of wages as required by N.C. Gen. Stat. § 95-25 was intentional and willful, Plaintiff is entitled to recover her unpaid wages plus interest, additional liquidated damages, in the amount of her unpaid wages, attorney's fees and costs of this action, pursuant to N.C. Gen. Stat. § 95-25.22.

## SECOND CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF 42 U.S.C. §2000e

*(**Defendant Family Dollar Stores, Inc. and Family Dollar Stores of North Carolina, Inc.**)*

72. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

73. Plaintiff was qualified for her position and performed her job duties at a level that met Defendant Family Dollar's legitimate expectations.

74. Plaintiff complained of racial discrimination to her supervisors.

75. Plaintiff's complaints were based on objectively reasonable belief that Mr. Ross' comments and threats constituted intentional discrimination.

76. Days after Plaintiff complained of consistent racial discrimination, Plaintiff was terminated from her position as assistant manager at Defendant Family Dollar.

77. Defendants intended to, and did, illegally retaliate against Plaintiff in reaction to her complaints of discrimination based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

78. As a direct and proximate result of Defendant Family Dollar Stores of North Carolina Inc.'s and Defendant Family Dollar Stores, Inc.'s illegal retaliation, Plaintiff has suffered lost wages and endured severe emotional distress.

## THIRD CLAIM FOR RELIEF: DISCRIMINATION/HARASSMENT IN VIOLATION OF 42 U.S.C. §2000e

*(**Defendant Family Dollar Stores, Inc. and Defendant Family Dollar of North Carolina, Inc.**)*

79. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

80. While employed at Defendant Family Dollar Stores of North Carolina, Inc., Plaintiff was subjected to racial harassment.

81. Plaintiff was consistently subjected to threats and derogatory comments based on her race.

82. These comments culminated in Mr. Ross' comment calling Plaintiff a "black bitch" and approaching Plaintiff in a threatening manner, such that customers at Defendants' store felt compelled to intervene.

83. The persistent and severe harassment altered the conditions of Plaintiff's employment and created an abusive and hostile work environment.

84. The harassment was so severe that Plaintiff repeatedly requested that her shift be changed and eventually formally requested a transfer to avoid interaction with Mr. Ross.

85. Plaintiff complained of Mr. Ross' comments and verbal and physical threats of harm on at least three separate occasions, but Defendants' agents did nothing to address Plaintiff's complaints.

86. Defendants failed to exercise reasonable care in preventing or correcting Mr. Ross's discriminatory behavior.

87. Plaintiff's race was clearly a motivating factor in terminating her employment.

88. Defendants intended to, and did, illegally discriminate against Plaintiff in reaction to her complaints of discrimination based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

89. As a direct and proximate result of the illegal discrimination outlined above, Plaintiff suffered lost wages and endured severe emotional distress.

# **FOURTH CLAIM FOR RELIEF: NEGLIGENT RETENTION AND SUPERVISION**

## (*All Defendants.*)

90. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

91. Plaintiff made multiple reports of unlawful discriminatory and derogatory language directed to her by employee David Ross on the basis of her race.

92. Plaintiff reported multiple incidents where Mr. Ross made Plaintiff feel physically threatened, both by his language and his physical actions.

93. Defendants knew about these offenses or would have discovered them in the exercise of ordinary awareness and prudence.

94. Defendants knew or should have known about the unlawful discriminatory language and actions directed toward Plaintiff by David Ross, yet Defendants failed to take reasonable precautions to prevent this harmful conduct.

95. In failing to take adequate precautions to prevent the wrongful acts herein described, all named Defendants breached their duty to Plaintiff, among others.

96. As a result of Defendants' negligence, Plaintiff has been damaged in an amount to be determined at trial.

97. Plaintiff is entitled to recover from Defendants compensatory damages, plus punitive damages, in an amount to be determined by the finder of fact, as well as attorney's fees.

# FIFTH CLAIM FOR RELIEF: RACIAL DISCRIMINATION

# UNDER 42 U.S.C. §1981

## (*All Defendants*)

98. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

99. Defendant Family Dollar Stores of North Carolina, Inc., acting on behalf of Defendant Family Dollar Stores, Inc., intentionally discriminated against Plaintiff by allowing its employee, Mr. David Ross, to engage in persistent discriminatory behavior and doing nothing to address Mr. Ross' discriminatory remarks regarding Plaintiff's race.

100. Defendant Carroll did nothing to address Mr. Ross' consistent derogatory comments and threats and even validated them on one occasion.

101. The persistent and severe harassment altered the conditions of Plaintiff's employment and created an abusive and hostile work environment.

102. The harassment was so severe that Plaintiff repeatedly requested that her shift be changed and eventually formally requested a transfer to avoid interaction with Mr. Ross.

103. Plaintiff complained of Mr. Ross' comments and verbal and physical threats of harm on at least three separate occasions, but agents of Defendant Family Dollar Stores of North Carolina, Inc. did nothing to address Plaintiff's complaints.

104. Plaintiff ultimately complained to Defendant Bhatti and was quickly fired.

105. Defendant Family Dollar Stores of North Carolina, Inc., and therefore Defendant Family Dollar Stores, Inc., failed to exercise reasonable care in preventing and correcting such harassing behavior.

106. Based on Defendants' course of conduct, it is clear that Plaintiff's race was a motivating factor in terminating her employment with Defendant Family Dollar.

107. It was incumbent upon both Defendant Carroll and Defendant Bhatti to ensure that their subordinates were free from discrimination and that discrimination was properly addressed. Accordingly, Defendants Carroll and Bhatti infringed upon Plaintiff's rights secured by 42 U.S.C. §1981.

108. All Defendants intended to, and did, infringe upon Plaintiff's rights secured by 42 U.S.C. §1981.

109. As a direct and proximate result of the illegal discrimination outlined above, Plaintiff suffered lost wages and endured severe emotional distress.

## SIXTH CLAIM FOR RELIEF: RETALIATION UNDER 42 U.S.C. § 1981

(*All Defendants*)

110. Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

111. Defendant Family Dollar Stores of North Carolina, Inc., and therefore Defendant Family Dollar Stores, inc., intentionally terminated Plaintiff because she complained of racial discrimination.

112. Plaintiff's January 26, 2019 complaint (as well as all prior complaints) was based on objectively reasonable belief that Mr. Ross' comments calling her a "black bitch" (as well as all prior racially derogatory comments and threats) constituted an intentional discriminatory act.

113. Plaintiff was terminated days after making complaints to Defendant Bhatti.

114. All Defendants failed to protect Plaintiff's right to be free from discrimination and participated in retaliatory efforts against Plaintiff which culminated in her termination.

115. As a direct and proximate result of Defendants' illegal retaliation, Plaintiff has suffered lost wages, eviction, and endured severe emotional distress.

### *RESPONDEAT SUPERIOR*

116. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

117. The actions of Defendants Carroll and Bhatti, including, but not limited to, their inattention to Plaintiff's complaints of harassment and their retaliatory termination of Plaintiff were acts performed by employees and agents of Defendant Family Dollar.

118. The acts of those employees took place during the hours those employees or agents of Defendant Family Dollar Stores of North Carlina, Inc. were in fact working for Defendant Family Dollar Stores of North Carolina, Inc. and Defendant Family Dollar Stores, Inc.

119. These acts were related to, or committed in the context of, the conduct these employees or agents were hired to perform.

120. The wrongful actions herein complained of were performed by agents of Defendant Family Dollar Stores of North Carolina, Inc., in the normal course of business. Defendant Family Dollar Stores of North Carolina, Inc. and Defendant Family Dollar Stores, Inc. are thus liable for their agents' actions under the doctrine of *respondeat superior*.

121. As a result of these actions, Plaintiff has been damaged in an amount to be determined at trial.

122. Plaintiff is entitled to recover from Defendants compensatory damages plus punitive damages, in an amount to be determined by the finder of fact, as well as attorney's fees.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS:

A. That judgment be entered against Defendants, jointly and severally, in favor of Plaintiff in amount to be determined at trial;

B. That Plaintiff recover of Defendants in excess of $75,000 as compensatory damages;

C. That Plaintiff recover of Defendants punitive damages in an amount calculated to punish Defendants and deter similar future conduct;

D. That Plaintiff recover of Defendants an amount of liquidated damages equal to the amount of all unpaid compensation, together with the costs and fees incurred in connection with this action, including all reasonable attorney's fees, pursuant to the provisions of N.C. Gen. Stat. § 25.22;

E. That Plaintiff be granted trial by jury;

F. That Plaintiff recover of the Defendants reasonable costs and expenses, including attorney fees, in bringing this action;

G. For such other and further relief as to the Court deems just and proper.

This, the 21st day of December, 2021.

                                                **FORGE LAW GROUP**
*Attorneys for Plaintiff*

                                                ___/s/J. Michael Genest___
J. Michael Genest
N.C. Bar No. 40703
1610 Highway 70 E.
New Bern, NC 28560
Telephone: (919) 747-3000
JMG@ForgeLawGroup.com